Jimmie L. CEASAR

v.

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY.**

No. 2:95–1296–18.

United States District Court, D. South Carolina, Charleston Division.

May 20, 1996.

John C. Land, III, J. Calhoun Land, IV, Manning, SC, for plaintiff.

Meredith Grier Buyck, James J. Hinchey, Jr., Charleston, SC, for defendant.

### ORDER

NORTON, District Judge.

This matter is before the court on motion for summary judgment filed by Defendant Hartford Life & Accident Insurance Company. The Plaintiff Jimmie L. Ceasar filed this action claiming that Defendant wrongfully denied Plaintiff's claim for permanent long-term disability benefits under Defendant's Employee Retirement Income Security Act (ERISA) group health plan. Defendant argues that it is entitled to summary judgment on the basis that (1) Plaintiff failed to exhaust his administrative remedies; and (2) the denial of Ceasar's claim was appropriate.[1]

---

1. Defendant's motion was also based on the argument that extra-contractual damages are not recoverable under ERISA. Prior to the hearing on Defendant's motion, the parties represented

## I. BACKGROUND

Plaintiff, while employed by Union Camp Corp. in Eastover, South Carolina, purchased a long-term disability policy with Defendant insurance company. Plaintiff alleges that in 1994 he began falling asleep unexpectedly and uncontrollably to the extent that he was diagnosed as having daytime hypersomnolence or sleep apnea. Plaintiff was released from employment with Union Camp on June 22, 1994. Plaintiff filed a claim for long-term disability benefits with Defendant, which was denied on May 2, 1995.

Plaintiff originally brought this claim in state court for long-term disability benefits in the amount of $355/week for the rest of his life due to permanent and total disability. Defendant removed the action to this court based on ERISA. In its Answer dated May 3, 1995, Defendant admitted that Plaintiff had a long-term disability policy with Defendant, but asserted that Plaintiff's claims were barred by his failure to exhaust all administrative remedies. On July 3, 1995, the parties entered into a consent order staying the proceedings so Plaintiff could exhaust his administrative remedies under ERISA.

On November 13, 1995, Plaintiff was advised of the second denial of his claim. This letter advised Plaintiff that, if he wished to appeal the denial in whole or in part, he could do so by writing Defendant within 60 days. Plaintiff did not appeal this denial, and asserts that since this letter was identical to the language of the first denial of his claim, a second attempt at review would have been futile.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ Defendant first moves for summary judgment on the ground that Plaintiff has failed to exhaust his administrative remedies. Plaintiff argues that even though he failed to appeal the November 13th denial of benefits, his obligation to exhaust administrative rem-

---

that they had resolved their dispute concerning the issue of extra-contractual damages. That issue was therefore withdrawn and not considered by this court.

edies was satisfied by his second submission. Furthermore, Plaintiff asserts that any further request for review would have been superfluous. Defendant acknowledges that, given the information submitted, any further request for review would not have yielded a different determination. Plaintiff has an obligation to exhaust administrative remedies available to him, which acts as a condition precedent to seeking review in this court. *Makar v. Health Care Corp.*, 872 F.2d 80, 82 (4th Cir.1989). Given the fact that Plaintiff filed his second request for benefits after the parties stayed these proceedings so that Plaintiff could exhaust his administrative remedies, and given Defendant's acknowledgment that an appeal of the second denial would have been fruitless, the court declines to dispose of Plaintiff's claim on that basis.

## III. REASONABLENESS OF REVIEW

Second, Defendant moves for summary judgment on the grounds that its denial of benefits was reasonable. Plaintiff seeks a determination by this court of entitlement to long-term disability benefits under the ERISA policy issued by his employer, Union Camp ("the Plan"). Defendant was the Plan Administrator and determined that Plaintiff did not qualify for benefits, according to the information provided to it, because Plaintiff did not meet the Plan's definition of "total disability."

### 1. *Standard of Review*

■ Defendant argues that its denial of Plaintiff's claim for benefits was reasonable, and should therefore be upheld as a matter of law. ERISA does not dictate the appropriate standard of review for evaluating the propriety of a denial of benefits. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the Supreme Court found that when a plan of insurance under § 1132(a)(1)(B) of ERISA does not give the plan administrator discretionary authority to interpret the plan's terms, then the reviewing court applies a *de novo* standard. Before this decision, "[t]he generally accepted view was that such determinations could not be disturbed by a reviewing court absent a clear showing that the

determination was arbitrary and capricious." *Nobel v. Vitro Corp.*, 885 F.2d 1180, 1183 (4th Cir.1989), *citing Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1006 (4th Cir.1985). After the Supreme Court's decision in *Firestone Tire & Rubber*,

> The threshold question for reviewing courts is now whether the particular plan at issue vests in its administrators discretion either to settle disputed eligibility questions or to construe "doubtful" provisions of the plan itself. If the plan's fiduciaries are indeed entitled to exercise discretion of that sort, reviewing courts may disturb the challenged denial of benefits only upon a showing of procedural or substantive abuse. If not, the benefits determination at issue must be reviewed de novo.

*Nobel*, 885 F.2d at 1186.

■ Defendant asserts that in this case, the plan fiduciary does have such discretion pursuant to the plan's provisions, so this court may disturb Defendant's denial of benefits only upon a showing of procedural or substantive abuse. The Plan provides under the heading "Proof of Loss" that "Hartford reserves the right to determine if proof of loss is satisfactory." Defendant points out that almost identical language in a policy was found to render review discretionary in *Donato v. Metropolitan Life Ins.*, 19 F.3d 375 (7th Cir.1994).

In *Donato*, the policy stated that the insurer would pay long-term disability benefits "upon receipt of proof" but that "all proof must be satisfactory to us." The Seventh Circuit Court of Appeals rejected Donato's contention that the language was not a sufficient grant stating that "in determining whether discretionary authority exists magic words ... are unnecessary," and that it would review the insurer's decision to deny benefits "only to determine whether that decision was arbitrary and capricious, which is to say downright unreasonable." *Id.* at 379–80 (citations omitted).

Plaintiff asserts that Defendant misreads the case law, but does not argue that the language of the Plan renders the administrator's decision subject to a *de novo* standard of review. Rather, Plaintiff argues that be-

cause Defendant's role as a fiduciary is inherent conflict with its role as a profit-making business, this court should not apply a deferential standard. In light of the clear language of *Firestone Tire & Rubber*, this court finds Plaintiff's argument to be without merit. Because the language of the Plan grants its administrators discretion to settle disputed eligibility questions, this court will apply a deferential standard of review to Defendant's actions.

## 2. Scope of Review

■ Defendant argues that this court is limited in its review of Defendant's denial of benefits to the record that was in front of the Defendant at the time of the denial. Plaintiff asserts that "additional evidence has been obtained through experts in the field of occupational disability" which "shows that the decision of the Defendant, to deny the disability claim, was unreasonable and not correct." (Pl.'s Mem.Opp.Def.'s Mot.Summ.J., at 7–8). Plaintiff does not specify what this evidence is, or where it is located, nor does he produce it for this court's consideration.

In any event, this court cannot consider additional evidence in construing the reasonableness of Defendant's denial of benefits. Rather, this court "may only consider evidence and arguments which were before the Plan Administrator at the time of the challenged decision." *Voliva v. Seafarers Pension Plan*, 858 F.2d 195, 196 (4th Cir.1988). *See also, Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir.1994) (finding that when conducting a review of an ERISA benefits denial under an arbitrary and capricious standard, the court must consider only the record before the Plan Administrator at the time he reached his decision), *Henderson v. Unum Life Ins. Co.*, 736 F.Supp. 100, 104 (D.S.C.1989), *aff'd* 900 F.2d 252 (4th Cir.1990) ("Although *Bruch* alters the standard by which the Court reviews a Plan Administrator's determination, it does not affect the scope of the Court's review, which remains limited to those issues decided by the administrator.").

Therefore, the court will determine whether the Hartford's decision was reasonable based upon the facts known to Defendant at the time the decision was made.[2]

## 3. Reasonableness of Defendant's Decision to Deny Benefits

■ Plaintiff sought benefits for total long-term disability. The parties agree that total disability occurs when "the insured person is prevented by accidental bodily injury or sickness from doing the material and substantial duties of his own occupation." (Aff. of Durant, Ex. A, at 8). Defendant denied benefits, finding that Plaintiff did not satisfy this definition because Plaintiff's sleep apnea may prevent his working at Union Camp due to the rotating shift requirements, but does not prevent Plaintiff from working in his job if there were no rotating shift requirements. Further, Defendant cited a labor market survey which confirmed that Plaintiff's occupation does exist in the national economy and does not require rotating shift requirements. (Aff. of Durant, Ex. B, at 3).

Plaintiff submitted to Hartford a volume of information concerning his claim, including a statement from Union Camp that Plaintiff did not return to work because he was disabled as the result of being unable to work shift work. Plaintiff also submitted medical records from his primary care physicians. Dr. Ingram's reports indicate that he did not support Plaintiff's claim for disability and that, in his opinion, Plaintiff was not disabled. Dr. McLean's records reflect that Plaintiff was disabled because of an inability to work shift work but that he could go back to work with a longer period of adjustment between the night shift and the day shift. Dr. Mauldin, another of Plaintiff's treating physicians, indicated in his records that sleep apnea was a very treatable condition and Plaintiff would remain an effective worker.

Defendant requested an internal medical review of the information available which did not support Plaintiff's claim for total disability. Defendant also obtained a market survey which identified various work sites where

---

2. Of course, this court's refusal to consider evidence not presented to the Plan Administrator at the time of the decision does not foreclose Plain-

tiff's option of resubmitting "new" evidence to Defendant for consideration if such an option is available to Plaintiff under the Plan.

similar job tasks were performed without the requirement of rotating shifts. No evidence was presented to Defendant that suggested that Plaintiff's occupation was limited to the Union Camp Plant, did not exist in the national economy, or necessarily required working rotating shifts. Defendant therefore determined that working rotating shifts are not a material and substantial duty of the Plaintiff's occupation as it exists in the national economy.

Defendant's conclusion that Plaintiff can continue to perform his occupation as long as he is not required to work rotating shifts is supported by the medical evidence provided by Plaintiff from his own treating physicians as well as by the internal medical evaluation conducted by the Defendant. Defendant's interpretation of the Plan's provisions was consistent with the language of the Plan and with the market survey conducted by an independent surveying association. Under these circumstances, this court cannot determine that Hartford's decision to deny benefits to Plaintiff was unreasonable.

## IV. *CONCLUSION*

For the foregoing reasons, it is therefore,

**ORDERED,** that Defendant's Motion for Summary Judgment be **GRANTED.**

**AND IT IS SO ORDERED.**