**John DOE, Plaintiff,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al. Defendants.**

**Case No. CV 15–04089–AB (FFMx)**

United States District Court, C.D. California.

Signed 10/05/2016

James P. Keenley, Brian Henry Kim, Emily A. Bolt, Bolt Keenley Kim LLP, Berkeley, CA, for Plaintiff.

Cindy Nguyen Mader, Linda Marie Lawson, Jason A. James, Meserve Mumper and Hughes LLP, Los Angeles, CA, for Defendants.

**ORDER (1) DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND (2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

HONORABLE ANDRÉ BIROTTE JR., UNITED STATES DISTRICT COURT JUDGE

Before the Court are cross-motions seeking to adjudicate the standard of review that will apply to this ERISA case. (Dkt. Nos. 48, 49.) The Court heard oral argument on October 3, 2016 and took the matter under submission. The Court rules as follows.

## I. BACKGROUND

The relevant facts are undisputed. Plaintiff, a resident of California, was an employee of William Morris Endeavor Entertainment, LLC ("WME"). WME provided Plaintiff employment benefits under the WME Plan ("Plan"). The parties agree that the Plan is an employee welfare benefit governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*

The Plan offers a number of benefits, including long term disability ("LTD") benefits, and is governed by a Master Wrap Plan Document ("Wrap Document"). *See* Mefford Decl. ¶ 5, Exh. 3. Defendant Prudential insures the LTD benefits provided under the Plan, and was also the claim administrator during the relevant time. Plaintiff applied for and was granted LTD benefits under the Plan, but the LTD policy included a mental illness limitation that limited his benefits to two years. At the end of two years, Plaintiff's benefits were terminated. Plaintiff is challenging the termination of those benefits.

The Wrap Document governs the administration of the Plan generally. In its section entitled "Administration," the Wrap Document includes a provision purporting to confer on the Plan Administrator discretionary authority to determine eligibility for benefits. *See* Wrap Document § 3.1 ("The Administrator, including any designee that it chooses to assist it to carry out its responsibilities under the Plan, shall have the maximum discretionary authority permitted by law to interpret, construe,

and administer the Plan ... The decisions of the Employer, Administrator, its designees, and/or insurance companies or HMOs providing coverage under this Plan, shall be given maximum deference permitted by law.").

Plaintiff argues that the discretionary authority that the Wrap Document purports to grant the Plan Administrator is inapplicable for several reasons. Plaintiff first poses technical challenges to the Wrap Document: he argues that it is inadmissible because Defendants produced it too late and did not present any evidence that it was ever adopted. Plaintiff also poses a substantive challenge to the discretionary clause: he argues that California Insurance Code § 10110.6 bars discretionary clauses in disability benefit policies, and that the discretionary authority provision is therefore void. If the discretionary clause is unenforceable, review would be de novo.

Defendants respond that § 10110.6(a) does not apply to the Plan, but that if it does, it is preempted by ERISA.

In addition to seeking a ruling on the standard of review, Plaintiff also seeks a determination that Defendants bear the burden of proof on the LTD policy's mental health illness limitation. Defendants argue that Plaintiff bears the burden of proving that the mental illness limitation does not apply.

## II. LEGAL STANDARD

A party may seek summary judgment on all or part of a claim. Fed. R. Civ. P. 56(a). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ERISA actions, a motion for summary judgment is largely a "conduit to bring the legal question before the district court." *Barnes v. Unum Life Ins. Co.*, 621

F.Supp.2d 1097, 1102 (D.Or.2009) (quoting *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir.1999), overruled in part on other grounds by *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 966–69 (9th Cir.2006) (en banc).

## III. DISCUSSION

■ The parties ask the Court to determine the standard by which the Court will review Prudential's benefits determination. "[A] denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir.2006) (en banc) ("De novo is the default standard of review."), *abrogated on other grounds by Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 113–15, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). Here, the Wrap Document purports to grant Prudential discretionary authority to determine eligibility for benefits. However, if the Court finds, as Plaintiff argues, that the discretionary clause is unenforceable, then the default de novo standard of review applies.

### A. The Wrap Document is Admissible.

■ Plaintiff argues the Court should find the Wrap Document inadmissible and not consider it because Defendants did not timely produce it: he argues that Defendants should have produced the Wrap Document before the lawsuit was filed or in their initial disclosures, at the latest, but instead produced it two weeks before the parties' opening briefs on these motions were due. Defendants provide no explana-

tion for their failure to produce the Wrap Document earlier. Certainly Defendants should have produced the Wrap Document earlier, but the Court finds that their failure to do so was harmless because Plaintiff had two weeks to consider it before filing his motion. Defendants' delayed production therefore does not trigger Fed. R. Civ. Proc. 37(c)(1)'s exclusionary sanction.

And, Plaintiff's assertion that Defendants have not presented any evidence that the Wrap Document was actually adopted is unavailing. Jessica Mefford, Plaintiff's employer's Vice President of human resources, states that the Wrap Document is one of the documents that "constitute the LTD Plan for purposes of ERISA." *See* Mefford Decl. (Dkt. No. 48–1), ¶ 2. This is sufficient to establish that the Wrap Document is a component of the Plan. Plaintiff presents no contrary evidence. The Wrap Document is therefore appropriately before the Court.

### B. Cal. Ins. Code § 10110.6(a) Invalidates the Discretionary Clause and is Not Preempted by ERISA.

A number of cases have addressed the same issues raised herein and have found that § 10110.6(a) applies to plan documents that are not insurance policies, and that it is not preempted. The Court finds *Snyder v. Unum Life Ins. Co. of Am.*, No. CV 13-07522 BRO RZX, 2014 WL 7734715, at *1 (C.D. Cal. Oct. 28, 2014) particularly thorough and persuasive, so the following discussion relies upon it heavily.

The parties' dispute as to the applicable standard of review begins with their divergent interpretations of Cal. Ins. Code § 10110.6. Section 10110.6 states, in relevant part:

(a) If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, ..., that provision is void and unenforceable.

. . . .

(c) For purposes of this section, the term "discretionary authority" means a policy provision that has the effect of conferring discretion on an insurer or other claim administrator to determine entitlement to benefits or interpret policy language that, in turn, could lead to a deferential standard of review by any reviewing court.

Defendant argues that § 10110.6(a) applies only to insurance policies, and cannot apply to the grant of discretion in the Plan. Plaintiff argues that § 10110.6(a) extends beyond insurance policies to other documents, like the Plan. A federal court interpreting a California statute should follow California's principles of statutory construction. *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). The court should give the statutory language "its usual, ordinary import." *Id.* Where the statutory text is ambiguous, the "court may consider extrinsic evidence of the legislature's intent, including the statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality." *Id.* (quoting *Hughes v. Bd. of Architectural Exam'rs*, 17 Cal.4th 763, 776, 72 Cal. Rptr.2d 624, 952 P.2d 641 (1998)).

Here, § 10110.6(a)'s ordinary language encompasses any "policy, contract, certificate, or agreement" that "provides or funds ... disability insurance coverage

for any California resident." Cal. Ins. Code § 10110.6(a). Thus, by its terms, the statutory language is not limited to insurance policies but also extends to "contracts" and "agreements" that "provide[ ] disability insurance coverage." Notably, "[a]n ERISA plan is a contract." *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 708 (9th Cir. 2012). Thus, the Plan is a contract that provides disability insurance coverage, so it appears to be subject to § 10110.6(a).

Arguably, § 10110.6(c) renders § 10110.6(a) ambiguous; it provides that " 'discretionary authority' means a *policy* provision that has the effect of conferring discretion on an insurer or other claim administrator[.]" Cal. Ins. Code § 10110.6(c) (emphasis added). Thus, section (c) defines discretionary authority as something granted in a *policy* as opposed to some other instrument.

To resolve this arguable ambiguity, the Court turns to legislative history, which confirms that the California legislature did not intend to limit § 10110.6(a) application to insurance policies. The legislative history is succinctly discussed in *Snyder v. Unum Life Ins. Co. of Am.*, No. CV 13-07522 BRO RZX, 2014 WL 7734715, at *8 (C.D. Cal. Oct. 28, 2014) and *Jahn–Derian v. Metro. Life Ins. Co.*, No. CV 13-7221 FMO SHX, 2015 WL 900717, at *3–*4 (C.D. Cal. Mar. 3, 2015). The Court agrees with those discussions.

■ In summary, the legislative history reveals that the legislature was concerned that discretionary clauses and the deferential standard of review they trigger were depriving insured Californians who were denied benefits a fair hearing in court. This concern applies regardless of whether the grant of discretion was placed in an insurance policy, a Wrap Plan, or some other plan document. Furthermore, as *Snyder* and *Jahn–Derian* point out, the legislative history specifically explains that "the bill '[m]akes void and unenforceable a provision in a life insurance or disability insurance policy, contract, certificate or agreement' " and specifically mentions ERISA plans, noting "that in 'employer-sponsored disability contracts that are governed by ERISA, the presence of a discretionary clause has the legal effect of limiting judicial review of a denial of benefits to a review for abuse of discretion.' " *Jahn–Derian*, 2015 WL 900717 at *3. To interpret § 10110.6(a) as applying only to insurance policies and not to discretionary grants in ERISA plans and governing documents would render the prohibition meaningless for all disability policies in ERISA plans. Given the apparent legislative intent, the legislature could not have meant to undermine its prohibition with a loophole so vast. The Court therefore finds that § 10110.6(a)'s prohibition on discretionary authority to administer disability benefit plans applies to documents other than contracts, and extends to ERISA plans and their governing documents. *Snyder*, 2014 WL 7734715 at *8 (finding that the California legislature intended that that the statute should apply to ERISA plans and governing plan documents).

■ Defendants also argue that, even if the California legislature intended to regulate ERISA plans, it has no authority to do so because ERISA preempts state regulation of employee benefit plans. Under 29 U.S.C. § 1144(a), ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." However, ERISA's savings clause saves from preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2). To fall under the savings clause, a state law (1) "must be specifically directed toward entities engaged in insurance," and (2) "must substantially affect the risk pooling arrangement between the insurer and

the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003).

■ In *Standard Ins. Co. v. Morrison*, 584 F.3d 837 (9th Cir.2009), the Ninth Circuit applied this test to a state insurance commissioner's practice of disapproving discretionary clauses in insurance contracts, including in insurance forms provided pursuant to ERISA plans. *Id.* at 841. The court found that the practice was saved from preemption by ERISA's savings clause. With respect to the first part of the test, the Ninth Circuit found that because ERISA plans "are a form of insurance," the commissioner's disapproval of discretionary clauses "regulates insurance companies by limiting what they can and cannot include in their insurance policies." *Id.* at 842. With respect to the second part of the test, the Ninth Circuit found that the commissioner's practice "remov[ed] the benefit of a deferential standard of review from insurers," leading to "a greater number of claims being paid" and "increasing the benefit of risk pooling for consumers." *Id.* at 845. Removing the deferential standard of review thus substantially affected the risk-pooling arrangement between the insurer and insured. Since *Morrison*, district courts have concluded that ERISA does not preempt § 10110.6(a) from applying to plans. *See Snyder*, 2014 WL 7734715, at *10 (collecting cases). Nothing distinguishes this case from *Morrison* or the district court cases that have applied. Furthermore, as the Supreme Court noted in an analogous case, to adopt Defendants' position that ERISA preempts *all* state regulation of plans would allow "insurers [to] displace any state [insurance] regulation simply by inserting a contrary term in plan documents. This interpretation would virtually 'rea[d] the saving clause out of ERISA.'" *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 376, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). As such, the Court finds that § 10110.6(a) is saved from preemption by ERISA's savings clause.

Finally, Defendants' argument that ERISA's "deemer clause" applies here is unpersuasive. ERISA's "deemer clause" qualifies the savings clause; it provides that "[n]either an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer ... for purposes of any law of any State purporting to regulate insurance companies, insurance contracts ..." 29 U.S.C. § 1144(b)(2)(B). Defendants seem to argue that § 10110.6(a) could only apply to the Plan by "deeming" the Plan to be an insurance company in order to regulate it as an insurance company. But § 10110.6(a) does not operate that way. It applies to any "policy, contract, certificate, or agreement" and simply does not turn on deeming an ERISA plan to be an insurance *company*.

For the foregoing reasons, the Court finds that Cal. Ins. Code § 10110.6(a) applies and renders the Plan's grant of discretionary authority unenforceable. As a result, the default *de novo* standard of review applies to this case.

## C. Plaintiff Bears the Burden of Proof on the Mental Health Limitation.

Plaintiff's claim turns largely on the application of the LTD policy's 24–month mental health limitation. This limitation states: "Disabilities which, as determined by Prudential, are due in whole or part to mental illness have a limited pay period during your lifetime.... The limited pay period for mental illness is 24 months during your lifetime." *See* Pl.'s Mot. 7:11–15. Plaintiff argues that Defendant has the burden of proof that the limitation applies because the so-called "limitation" is really a time-delayed exclusion. Defendants ar-

gue that the limitation is just that—a limitation—so Plaintiff has the burden of proof on the issue.

The parties' briefing on this issue was not particularly thorough; for example, they failed to define the terms "limitation" and "exclusion." However, it is apparent from the cases, and the parties evidently agree, that "as a matter of general insurance law, the insured has the burden of proving that a benefit is covered, while the insurer has the burden of proving that an exclusion applies" because an exclusion is an affirmative defense. *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004); *see also Fought v. UNUM Life Insurance Company of America*, 357 F.3d 1173, 1185 (10th Cir.2004) (per curiam) ("Under ERISA, an insurer bears the burden to prove facts supporting an exclusion of coverage ... Thus, as an affirmative defense, an exclusion of coverage requires that the insurer provide proof by a preponderance of the evidence."). "[A] clause that excludes a particular condition or occurrence from the coverage provided by the policy" is an exclusion. *Critchlow*, 378 F.3d at 256.

*Hoffmann v. Life Ins. Co. of N. Am.*, 2014 WL 7525482 (C.D. Cal. Dec. 29, 2014) and *Seaman v. Mem'l Sloan Kettering Cancer Ctr.*, 2010 WL 785298 (S.D.N.Y. Mar. 9, 2010) addressed similar 24–month mental illness limitations and found that they are limitations and not exclusions. In both cases, the courts noted that an exclusion operates to *totally deny coverage*, and that therefore a provision that merely limits coverage to 24 months is a limitation and not an exclusion. *See Hoffman*, 2014 WL 7525482 at *5 ("the two-year mental illness limitation at issue in this case is not an 'exclusion' ... Plaintiff received benefits for two years."); *Seaman*, 2010 WL 785298, at *10 ("Seaman's disability is not a condition that is excluded from coverage, as evidenced by the fact

that First Unum did pay 24 months of benefits ... Instead, the provision is more like a limitation...."). On this basis, *Seaman* rejected the exact same argument Plaintiff here makes: "that the policy's mental illness limitation is essentially a time-delayed exclusion." *Id.* Accordingly, both cases determined that the provision was a limitation not an exclusion, and that the plaintiff bore the burden of proof as to the application of the limitation.

Having considered the parties' arguments and the cases, the Court finds that the mental illness limitation is a limitation and not an exclusion. Plaintiff therefore has the burden of proof with respect to the mental health limitation.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Summary Judgment, and **GRANTS in part and DENIES** in part Plaintiff's Motion for Summary Judgment.

More specifically, ERISA's default de novo standard of review applies, and Plaintiff bears the burden of proof with respect to the mental health limitation.